UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | |
| **GEAROLD DELONE** | **NO. 23-00085-BAJ-RLB-1** |

### RULING AND ORDER

Before the Court is Defendant Gearold Delone's **Motion To Dismiss Count One Of The Indictment (Doc. 26, the "Motion")**, which raises facial and as-applied constitutional challenges under 18 U.S.C. § 922(g)(1). The United States opposes the Motion. (Doc. 34). For the following reasons, Defendant's Motion will be **DENIED**.

### I.  PROCEDURAL HISTORY

On September 27, 2023, the Grand Jury for the Middle District of Louisiana handed down a two-count Indictment against Defendant Gearold Delone and his Co-Defendant, Michael Seal. (Doc. 1).[1] Count One charges Defendant Delone with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (*Id.*).

The Indictment does not describe the details of Defendant's prior felony conviction. (*Id.*). However, the United States has provided information regarding two prior felony convictions. (Doc. 34 at 2). First, Defendant was convicted of possession of Schedule II narcotics on November 28, 2022, in the 21st Judicial District Court.

---

[1] Defendant Michael Seal also moved to dismiss Count Two of the Indictment. (*See* Doc. 33). The Court denied the Motion. (Doc. 105).

(*Id.*) Second, Defendant was convicted of the crime of accessory after the fact to armed robbery on May 31, 2018, in the 19th Judicial District Court. (*Id.*)

On February 16, 2024, the Court stayed this case pending a ruling in *United States v. Rahimi*, 602 U.S. 680 (2024). (Doc. 55).

On October 10, 2024, Defendants filed a motion to lift the stay and set a briefing schedule regarding the impact of the Fifth Circuit's more recent decision, *United States v. Diaz*, on Defendant's Motion. (Doc. 72). The Court granted Defendants' motion and lifted the stay. (Doc. 74) The Government filed an Opposition to Defendant's Motion. (Doc. 78). Defendant filed a Response. (Doc. 89). The United States filed a Reply. (Doc. 95).

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

Here, Defendant pursues "as applied" and facial challenges to § 922(g)(1). (Doc. 18). "The distinction between as applied and facial challenges is sometimes hazy." *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022) (citation omitted). Generally, however, in an as-applied challenge, the Court assesses whether a law with some permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing defendant's criminal conviction); *see Street v. New York*, 394 U.S. 576, 594

2

(1969) (same). By contrast, in a facial challenge, the Court's analysis is considerably broader in scope, assessing whether a law "could ever be applied in a valid manner." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

### III. DISCUSSION

Since the filing of Defendant's Motion, the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit have provided additional guidance on the constitutionality of 18 U.S.C. § 922(g)(1). The Court discusses such developments below, then analyzes the impact of this jurisprudence on Defendant's Motion.

#### A. Second Amendment Jurisprudence.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These twenty-seven words, largely unquestioned since their first utterance, *see* Danny Y. Li, ANTISUBORDINATING THE SECOND AMENDMENT, 132 Yale L.J. 1821, 1846 (2023), have caused considerable consternation among our Nation's courts in the past two decades. The results of this attention have been dramatic. The Second Amendment was reinterpreted to provide an individual right to firearms, *D.C. v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court declared that the Second Amendment is no longer a so-called "second-class right," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022), and

3

existing constitutional tests for firearm regulations were upended in favor of extended dives into distant history in search of metaphorical ancestors to present-day legislation. *See United States v. Rahimi*, 602 U.S. 680, 697–701 (2024).

It is from this backdrop that the Court arrives at its current marching orders. When a challenge to firearm legislation is lodged, the Court is required to conduct a two-step analysis: (1) ascertain whether the "Second Amendment's plain text covers [the] individual's conduct," and (2) if the Second Amendment covers the relevant conduct, determine whether the United States has satisfied its burden of showing that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. 1, 24 (2022). In this process, the Court must not conflate the requirement for a "historical analogue" with a necessity for a "historical twin," or an identical regulation from our Nation's early history. *Rahimi*, 602 U.S. at 701.

The Fifth Circuit has also provided guidance to lower courts on navigating the post-*Bruen* landscape. In *United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024), *cert. denied*, No. 24-6625, 2025 WL 1727419 (U.S. June 23, 2025), the Fifth Circuit held § 922(g)(1) constitutional as applied to a defendant who had prior convictions for car theft, evading arrest, and possessing a firearm as a felon. The Fifth Circuit reasoned that since theft was a felony at the time of the Founding, and since felonies at the time of the Founding were punishable by death, then the non-capital punishment of disarmament is also permissible. *Id.* at 469. The Fifth Circuit further noted the existence of other laws in place at the time of the Founding that disarmed

4

"those who menaced others with firearms," "disrupted the 'public order,'" and pursued actions that "le[d] almost necessarily to actual violence." *Id.* at 470–471 (quoting *Rahimi*, 602 U.S. at 697).

### B. Defendant's Challenges Under 18 U.S.C. § 922(g)(1).

The Court first analyzes Defendant's facial attack on 18 U.S.C. § 922(g)(1) and then turns to Defendant's as-applied challenge to same.

#### i. Defendant's Facial Attack on 18 U.S.C. § 922(g)(1) Fails.

The Court begins with Defendant's facial attack on 18 U.S.C. § 922(g)(1). The Fifth Circuit's decision in *Diaz* forecloses such an attack.[2] To sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In *Diaz*, the Fifth Circuit ruled that § 922(g)(1) was constitutional as applied to the defendant, and thereby ruled that § 922(g)(1) is facially constitutional. *Diaz*, 116 F.4th at 472. Based on Fifth Circuit precedent, Defendant's facial attack on § 922(g)(1) fails.

#### ii. Defendant's As-Applied Challenge to 18 U.S.C. § 922(g)(1) Fails.

The Court turns to Defendant's as-applied challenge to 18 U.S.C. § 922(g)(1). Under *Bruen*, the Court must first ascertain whether the "Second Amendment's plain text covers [the] individual's conduct[.]" *Bruen*, 597 U.S. 1, 24 (2022). The

---

[2] Defendant has conceded that "his facial challenged is foreclosed." (Doc. 89 at n. 17).

5

Fifth Circuit applied this framework to § 922(g)(1) in *Diaz*. 116 F.4th at 458. *Diaz* considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation." *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692). The Fifth Circuit held "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) . . . ." *Id.* Thus, the Government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted); *see also United States v. Quinn*, 779 F. Supp. 3d 831, 836 (M.D. La. 2025).

The Court thus proceeds to the second step: whether there is a historical analogue for the application of § 922(g)(1) to this Defendant. Defendant avers that there is no historical analogue for disarming him for his prior conviction of accessory after the fact to armed robbery. (Doc. 26 at 8). In further support of his Motion, Defendant argues the following:

(1) there is no crime of "accessory after the fact to armed robbery" contained in the Louisiana Revised Statutes;

(2) even if such a crime existed, accessory after the fact would not have been punished severely at the time of the Founding;

(3) although robberies are considered crimes of violence under Louisiana law, convictions for accessories after the fact are *not* deemed crimes of violence;

6

(4) accessory after the fact under Louisiana Revised Statutes § 14:25 is not a predicate conviction for prosecution under Louisiana's felon in possession statute; and

(5) the federal Government is attempting to prosecute under § 922(g)(1) where Louisiana law explicitly permits firearm possession under Louisiana Revised Statutes § 14:95.1—a violation of fundamental principles of federalism that exceeds historical understanding of federal power.

(Doc. 89 at 6–15).

The United States argues that there *are* historical analogues—namely, robbery and burglary statutes in place at or around the era of our Founding—that support the application of § 922(g)(1) to Defendant. (Doc. 78 at 5–6). The United States cites numerous authorities for the proposition that robbery was a common-law felony punishable by death in England, and that these laws were carried over into many American colonies. (Doc. 78 at 6–7 (citing William Blackstone, *Commentaries on the Laws of England* 94–98, 241–243 (1769); Henry John Stephen, *Summary of the Criminal Law* 97–98 (1840); Stuart Banner, *The Death Penalty: An American History* 7 (2002) ("Except for a very brief period in early seventeenth-century Virginia, the early southern colonies did not enact criminal codes as the northern colonies did, but simply used English law."))). The Government also points the Court to various state statutes from the time of the Founding that explicitly made robbery a capital offense. (Doc. 78 at 6 (citing Laws of the State of New York Passed at the First Meeting of the

7

11th Session of the Legislature at 664–666 (1788); An Act Against Burglary, 1784 Mass. Acts & Laws January Session 242; An Act for the Punishment of Burglary and Robbery, 1783 Conn. Acts & Laws, October Session 633; 1780 Pennsylvania – 4th General Assembly, Second Sitting 319–321)).

The Court was faced with a similar inquiry in the context of conspiracy to commit armed robbery in *United States v. Quinn*, 779 F. Supp. 3d 831, 842 (M.D. La. 2025). There, the Court acknowledged that, under Louisiana law, conspiracy to commit armed robbery "requires an act in furtherance of the armed robbery—not merely an agreement to commit the armed robbery." *Id.* at 840. The Court determined that "[t]he closest historical analogues to Louisiana's modern offense of conspiracy to commit armed robbery are thus not historical common law conspiracy statutes (which, again, required no more than a mere agreement) but historical robbery, accessory to robbery, and aiding and abetting robbery statutes." *Id.* The Court stated that "[r]obbery was, without any doubt, a felony at common law and at the time of the founding[,]"and then proceeded to discuss the various methods of punishment for robbery in several states. *Id.* at 840–842. From this analysis, the Court concluded that there is "a clear historical tradition of punishing not only armed robbery but also aiding, abetting, or accessory to robbery with capital punishment." *Id.* at 841. The Court further found that § 922(g)(1) "comports with both the 'why' and 'how' of these historical analogues." *Id.* at 842. On these grounds, the Court denied

8

the defendant's motion to dismiss the Indictment based on the predicate conviction of conspiracy to commit armed robbery. *Id.*

The reasoning and analysis set forth by the Court in *Quinn* is directly applicable to the facts presented herein. It stands to reason that offenses that facilitate such crimes will be treated as seriously as the core offenses. *See United States v. Vargas*, 74 F.4th 673, 687 (5th Cir. 2023) (citing *Inchoate Offense*, Black's Law Dictionary (11th ed. 2019)). Thus, for the same reasons, the Defendant's predicate felony of accessory after the fact to armed robbery supports the application of § 922(g)(1). The Court will deny Defendant's Motion.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion (Doc. 26)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 4th day of September, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**